[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
This is an action for dissolution of marriage and other relief brought to the judicial district of Waterbury. Many of the facts that give rise to this action are not in dispute. The plaintiff, whose maiden name is Sheila Halko, and the defendant were married at Fairfield, Connecticut on February 6, 1965. The plaintiff has resided continuously in the State of Connecticut for at least 12 months immediately prior to the date the complaint was filed. The marriage between the parties has broken down irretrievably without any reasonable prospects of reconciliation. There are no minor children issue of this marriage. The parties have three adult children issue of their marriage. Neither party has received State assistance.
The parties are in dispute as to the cause of the breakdown of the marriage. From the evidence presented the court finds that the defendant's gambling was the primary cause of the breakdown of the marriage.
The plaintiff was born on June 6, 1943. She has been employed at General Data Comm for almost 18 years. During the 18 years that she has been employed there, she received very little assistance from the defendant in raising the children. She had been primarily responsible for raising the adult children when they were minors. Her present employment hours are 8:00 a.m. to 5:00 p.m. The plaintiff is presently on medication that is covered through the defendant's health insurance with a $10 co-pay. She treats with one doctor for a heart condition and with another doctor for her asthma. She is on two separate medications that she takes monthly, each of them having a $10 co-pay. She treats with one physician for her diabetic condition. One of the doctors she treats with is for her stress condition.
The costs for the plaintiff for COBRA health benefits for the plaintiff for hospital and doctor is $248 per month with an additional $32.64 for dental coverage.
The plaintiff is employed at General Data Comm. Her gross weekly income is $559. She has deductions of federal income tax of $63 weekly, state income tax of $10 weekly, FICA/self-employment tax of $35 weekly for total deductions of $108 and a net weekly income of $451. She has gross weekly expenses totaling $576. She has the following liabilities: CT Page 15579
 1. First USA with a balance of $1,106. The debt that the plaintiff has to First USA is not related to the Discover card that was subsequently transferred to First USA and then Chase VISA. The First USA debt is solely that of the plaintiff. Approximately $7,500 of the plaintiff's Chase VISA is the amount due from the transfer of the Discover Card debt to Chase VISA. All other debt shown on the plaintiff's financial affidavit were incurred solely by the plaintiff.
2. Chase VISA (formerly Discover) with a balance of $7,800.
3. Sears with a balance of $581;
4. Kohls with a balance of $56;
5. J.C. Penney with a balance of $166;
6. Attorney's fees with a balance of $4,383;
 7. 1999 Taxes with a balance of $1,427. The plaintiff's financial affidavit dated August 10, 2001, in a schedule identified as "Additional Information" shows a liability for 1998 disputed taxes in the amount of $608. That matter has been resolved and that liability no longer exists. There is still an outstanding liability owed to the IRS for the calendar year 1999 in the amount of $1,427. The taxes owed is the amount of $1,427 has been paid in full. $269 was paid from a State of Connecticut tax refund. The balance of $1,158 was paid by the plaintiff by using her Stratford Credit Union account.
8. A general liability with a balance of $350.
The plaintiff has bank accounts totaling $1,672. She has a 401k plan with a value of $36,377.
The plaintiff in her financial affidavit dated August 10, 2001, shows a deduction from gross earnings of $95 for credit union. That deduction goes into her savings account, vacation plan account and Christmas club.
She deposited $6,000 into her Naugatuck Bank account on December 17, 1999, from the proceeds of her automobile accident. The defendant's $5,000 settlement funds went to a joint account and was used to pay joint expenses.
The plaintiff paid to her attorney on June 23, 2000, $3,765. She cashed a check from her checking account in the amount of $5,000 on March 14, CT Page 15580 2000 and turned the money over to her mother to hold. Her mother is holding approximately $800 from those funds for the plaintiff. The funds held by her mother were not shown on the plaintiff's financial affidavit when pendente lite orders were entered on September 11, 2000. The remaining $4,200 has been spent by the plaintiff mostly for various vacation trips.
The defendant was born on October 19, 1941. The defendant currently suffers from Depression. He has been on medication since June, 2000.
The defendant was prescribed Celexia by a psychiatrist for depression and was on it for about one year. He was taken off the medication due to a face rash and then placed back on the medication. He saw a psychiatrist once a week for a period of 4 to 5 weeks. He has also been seen by a physician that specializes in Arthritis and blood problems. At about the time this dissolution action was commenced, he was out of work for a period of about 2 to 4 weeks for depression and stress. He does not know when he will be able to return to work at Sikorsky. The $70,000 that the defendant netted approximately 4 to 5 years ago from his automobile accident was used in part as follows: a) $4,000 — $5,000 for a driveway for the family home, b) $5,000 for a new deck for the family home, c) the purchase of new appliances and furniture for the family home, d) $2,000 — $3,000 for gambling, e) $9,000 to purchase a Jeep automobile and f) $4,000 to the parties daughter.
The defendant presently receives disability pay from his employment at Sikorsky Aircraft since April, 2001 or May, 2001, in the gross weekly amount of $460 and net weekly amount of $356. No credible evidence has been presented on the issue of whether the defendant will be able to return to work. He has gross weekly expenses of $690.05. He has the following liabilities:
1. Firestone Tires in the amount of $100;
2. GE Capita VISA in the amount of $3,633; and
3. CITGO in the amount of $300.
He has $200 in the Sikorsky Federal Credit Union. He owns United States Savings bonds with a value of $300.
The defendant has been employed at Sikorsky's for 23 years. He has been out of work since April 26, 2001.
The parties own a family home located at 84 Bluebird Drive, Naugatuck, Connecticut. It has a fair market value of $128,000 and a mortgage CT Page 15581 balance of $46,200 and equity of $81,800. The parties own a 1995 Jeep Cherokee with a fair market value of $7,000 and no loan balance. The plaintiff owns a 1988 Ford Thunderbird with a fair market value of $750 and no loan balance. The defendant owns a 1995 Ford Tempo with a fair market value of $2000 and no loan balance. The parties will have owned the family home for 20 years as of November, 2001.
The 1995 Jeep Cherokee was purchased in 1995 at a cost of approximately $12,000 to $13,000. The defendant drives the Jeep and the plaintiff drives the 1994 Ford Tempo at the present time. Title to the Jeep was transferred to the plaintiff by the defendant shortly before he filed for bankruptcy. Also a bank account that was in joint names was withdrawn by the plaintiff with the plaintiff keeping all of the funds shortly before the defendant filed for bankruptcy.
The defendant filed a petition in bankruptcy dated May 17, 2000. He received his discharge in bankruptcy on September 5, 2000. The plaintiff has not filed for bankruptcy. The defendant informed the plaintiff that he was filing for bankruptcy prior to the date he filed.
This action was commenced by the plaintiff by summons dated June 21, 2000, that was served upon the defendant in hand on June 26, 2000. The bankruptcy petition filed by the defendant was dated May 17, 2000 for a chapter 7 bankruptcy. The defendant received his discharge in bankruptcy dated September 5, 2000. The approximate $35,000 that the defendant discharged in credit card debt was all for his gambling. One of the unsecured debts scheduled by the defendant was a Discover Platinum card with a balance due of $6,593.77. This account had been a joint account in both the plaintiff and the defendant's name. After 1995, the defendant drew cash advances against the account in excess of $8,000 that he used to gamble with at one or more casinos. The plaintiff transferred the Discover account balance to an account that she had in her name only at First USA and then to Chase VISA in order to obtain a lower rate of interest. The plaintiff now seeks an order from the court for reimbursement by the defendant of her payments on the Discover account. The plaintiff argues that this court has the authority to enter an order for the defendant to pay to or for the benefit of the plaintiff an amount equal to the debt that he discharged in bankruptcy on the Discover card claiming that that authority is pursuant to § 46b-81 and 46b-82 as well as to application of the equitable principle of equitable estoppel. There are two essential elements to an equitable estoppel; namely a party must do or say something which is intended or calculated to induce another to believe in the existence of certain facts and to act upon that belief; and the other party, influenced thereby, must actually change his position or do something to his injury which he would not otherwise have done. The plaintiff makes the following argument regarding the equitable CT Page 15582 estoppel claim:
 In the instant case, the defendant represented to the plaintiff that he would "take care of" the Discover card debt he incurred in the amount of approximately $8,000 notwithstanding his intention to discharge his obligation to that creditor in bankruptcy. In reliance upon such promise and representation, he failed to list the plaintiff as a creditor in his bankruptcy schedule. Such an omission precluded the plaintiff from participation in the defendant's bankruptcy.
The court is not persuaded by the argument. There is no credible evidence that the plaintiff was influenced by any statements made by the defendant and changed her position or did something to her injury which she would not otherwise had done. Further, there is no credible evidence that anything that the defendant may have said was intended or calculated to induce the plaintiff to believe in the existence of certain facts and to act upon that belief.
The bankruptcy statute affords the individuals broad protection in discharging their liabilities. This court will not interfere with that protection by ordering a party to pay a debt which he was discharged from paying in bankruptcy.
The parties entered into an agreement on October 16, 2000, that was approved of and coded number 108. That agreement was for the 1988 Ford Thunderbird motor vehicle to be sold as soon as possible and the proceeds given to the plaintiff as payment towards outstanding temporary alimony in the amount of $1,853 as of October 16, 2000. In the event this sale does not generate this amount, the additional arrearage should be paid by an additional weekly order. On September 11, 2000, the following pendente lite order was entered:
 The plaintiff's motion for alimony pendente lite is granted. The defendant shall pay plaintiff $250 per week as alimony pendente lite. This alimony order is retroactive 8 weeks to the date of the filing of the motion. This 8 week alimony arrearage is to be paid to the plaintiff within one week. The defendant shall not charge on any credit cards. Within 2 weeks the defendant shall supply his attorney with all discovery requests by plaintiff's attorney. Income withholding is ordered.
The defendant did not pay the arrearage originally found on October 18, 2000.
As of August 10, 2001, the arrearage owed from the defendant to the plaintiff amounts to $3,428. CT Page 15583
The title to the Thunderbird automobile is still in the defendant's name.
In 1990, the defendant received a net recovery of approximately $70,000 from a car accident. None of that money presently remains.
In approximately May of 1995, $5,000 of the defendant's $70,000 settlement was used to pay on the Discover bill. Two separate CDs were funded with the settlement. One in the amount of $10,000 and a second in the amount of $5,000. Some of the money was also used for home renovations, new furniture and new appliances. In 1999, the defendant had another car accident in which he netted approximately $5,000.
The following table shows the W2 wages for the plaintiff and the defendant for the calendar years 1997 through 2000.
Year W2 wages plaintiff W2 wages defendant
 1997 $10,062.94 $33,583.37 1998 $17,333.73 $33,497.71 1999 $23,629.45 $37,869.62 2000 $25,576.93 $47,514.34
The court finds that the defendant has a substantially greater earning capacity than the plaintiff when the defendant is employed.
This court has considered the provision of § 46b-82 regarding the issue of alimony, and has considered the provision of § 46b-81 (c) regarding the issues of property division, and has considered the provision of § 46b-62 regarding the issue of attorney's fees. The Court enters the following orders:
 ORDERS
A) By Way of dissolution
1. The marriage between the parties is dissolved and each party is declared to be single and unmarried.
B) By way of property orders
1. The approximate $800 held by the plaintiff's mother on behalf of the plaintiff is awarded to the plaintiff.
2. The checking account, Christmas and vacation club, and savings CT Page 15584 account shown on the plaintiff's financial affidavit totaling $1,672 is awarded to the plaintiff.
3. The 401k Plan shown on the plaintiff's financial affidavit with a total value of $36,377 is to be divided equally between the parties. This transfer is to be completed by December 28, 2001.
4. The 1995 Jeep Cherokee is awarded to the defendant. The plaintiff is to execute whatever documents are necessary for that purpose. This transfer is to be completed by December 28, 2001.
5. The 1986 Ford Thunderbird is awarded to the plaintiff. The defendant is to execute whatever documents are needed for that purpose. This transfer is to be completed by December 28, 2001.
6. The 1994 Ford Tempo is awarded to the plaintiff. The defendant is to execute whatever documents are needed for that purpose. This transfer is to be completed by December 28, 2001.
7. The defendant Sikorsky Federal Credit Union with a balance of $200 is awarded to the defendant.
8. The United States savings bonds held by the defendant with a value of $300 are awarded divided equally between the parties. This transfer is to be completed by December 28, 2001.
9. The court orders that the defendant's Sikorsky Aircraft Pension Plan be divided equally between the parties with defendant electing a joint and survivorship option in that plan. The plaintiff is to be responsible for the costs for preparing the QDRO for that plan.
10. All liabilities shown on the plaintiff's financial affidavit are to be paid by the plaintiff and she is to hold the defendant harmless therefrom.
11. All liabilities shown on the defendant's financial affidavit are to be paid by the defendant and he is to hold the plaintiff harmless therefrom.
12. a. The defendant is to quit-claim to the plaintiff all of his interest in the marital residence located at 84 Bluebird Drive, Naugatuck, Connecticut. The plaintiff is to be responsible for keeping current the mortgage, real estate taxes and homeowner's insurance and hold the defendant harmless therefrom. This transfer is to be completed by December 28, 2001. CT Page 15585
b. The defendant is to vacate the marital residence by December 28, 2001.
c. The plaintiff is to execute and deliver to the defendant a non-interest bearing promissory note secured by a mortgage deed on the family residence in the principal amount of $30,000 payable upon the first of any of the following events: 1) the death of the plaintiff; 2) the remarriage of the plaintiff; 3) co-habitation of the plaintiff as defined by statute; 4) the date the plaintiff vacates the marital residence; 5) the commencement of a foreclosure action; or 6) three years from the date this decision is filed.
d. The defendant is to hold the plaintiff harmless from any liability from his failure to report any gambling or other income or disallowance by the Internal Revenue Service of any deduction claimed by the defendant in any tax return filed by the parties with any federal or state taxing authority during the marriage.
13. The court orders that all personal property furniture and furnishings listed on plaintiff's exhibit 23 be divided in accordance with plaintiff's exhibit 23.
C) By way of alimony
1. The defendant is to pay to the plaintiff as alimony the sum of $1 per year.
2. He is ordered to notify the plaintiff in writing by registered mail/return receipt or certified mail/return receipt within 15 days of the date that he returns to any employment. In the event the plaintiff obtains a modification of the alimony order following the defendant's returning to employment and the defendant has failed to notify the plaintiff within 15 days of his return to employment, then the court may, but not necessarily has to, order that any alimony modification be retroactive to the date the defendant returned to employment.
D) By way of attorney's fees
1. No attorney's fees are ordered in favor of either party.
E) Miscellaneous orders
1. Counsel for the plaintiff is to prepare the judgment file within thirty (30) days and send it to counsel for the defendant for signature and filing. CT Page 15586
2. The parties are to exchange copies of their federal and state income tax returns by certified mail/return receipt and/or registered mail/return receipt within thirty (30) days after such returns have been filed for so long as there is an outstanding alimony order or any arrearage thereto.
3. The pendente lite orders and any arrearages arising therefrom are not merged into the judgment and are to survive the judgment. The arrearages are to be paid in full by December 28, 2001
 ___________________, J. AXELROD's